# EXHIBIT   1

FILED
IN CLERKS OFFICE

2012 AUG 17  A 10: 28

U.S. DISTRICT COURT
DISTRICT OF MASS.

**UNITED STATES DISTRICT COURT**
**DISTRICT OF MASSACHUSETTS**

FILED
CLERKS OFFICE

· 2012 AUG -7 ⊃ 2: 21

U.S. DISTRICT COURT
DISTRICT OF MASS.

|  |  |
|---|---|
| JAMES S. DICKEY & <br> EAST FOURTH STREET, LLC, <br>     Counter-Claimants <br><br>      v. <br><br> CITY OF BOSTON, through the <br>     INSPECTIONAL SERVICE <br>     DEPARTMENT, <br>       Counter-Defendant <br><br> EDWARD COBURN, individually and <br>     in his official capacity as lawyer <br>     for the City of Boston <br><br> JAMES COTTER III, individually and <br>     in his official capacity as receiver <br>     for the Boston Housing Court <br><br> MARYLOU MUIRHEAD, individually <br>     and in her official capacity as <br>     judge for the Boston Housing Court <br><br> JEFFERY WINIK, individually and in <br>     his official capacity as judge for <br>     the Boston Housing Court <br><br>       Defendants | CIVIL ACTION NO. 1:12-cv-10979 JLT |

## COUNTER CLAIM

### INTRODUCTION

1.  This counter-suit challenges the constitutionality of Massachusetts General Laws

    chapter 111, § 127I (the "Receivership Statute") and seeks preliminary and permanent

    injunctive relief barring it's enforcement. The receivership statute allows a

1

municipality to petition a Court for the appointment of a Receiver to make repairs to a building. But, the receivership statute does not provide for notice of the pending petition to be posted at the premises that is the subject of the petition for receivership; the receivership statute itself fails to ensure that property owners will receive due process and, is thus, unconstitutional. The lack of service by not posting the subject premise is in violation of 42 U.S.C. 1983, furthermore the notice procedures employed by the City violates the Fifth Amendment and the Due Process Clause of the Fourteenth Amendment of the U.S. Constitution.

2. This counter-suit seeks compensation from Defendants Edward Coburn ("Coburn"), James Cotter ("Cotter"), and Counter-Defendant the City of Boston ("City") for property damage due to negligence that occurred when the City, pursuant to a "padlock policy", seized 495 East Fourth Street, South Boston and 497 East Fourth Street, South Boston, Massachusetts (the "Properties") from May 27, 2008 thru November 25, 2008; and May 29, 2012 to date, when receiver James Cotter seized the Properties.

3. And further seeks damages from Counter-Defendant the City of Boston and Defendant Edward Coburn for interfering with a business relationship, when on or about March 2011 Coburn relayed to Endeavor Capital Funding LLC ("Endeavor") that he would place the Properties into receivership if Endeavor renewed their mortgage on the Properties. Then further arranged to have Endeavor agree to finance receiver James Cotter to repair the Properties while not renewing their mortgage.

4. The Counter-Claimants further seeks declaratory and injunctive relief and monetary damages as restitution as well as treble damages to the Counter-Claimants for the

2

Defendant's Edward Coburn, James Cotter, Jeffery Winik and Marylou Muirhead violation as alleged herein pursuant to 18 U.S.C. § 1964(c). This is a claim for which relief can be granted pursuant to Title IX of the Organized Crime Control Act of 1970, Public Law 91-452, 84 Stat. 922, commonly known and referred to as RICO, codified at 18 U.S.C. § 1961, et. Seq., and in particular for violations of 18 U.S.C. § 1962. This counter-claim asserts violations of the Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. § 1961-1968, the Hobbs Act, 18 U.S.C. § 1951, and Mail Fraud, 18 U.S.C. § 1341. During the relevant times, the Counter-Defendants Edward Coburn, Marylou Muirhead, Jeffrey Winik and James Cotter conspired to extort real property from the Counter-Claimant and other property owners in the City of Boston; the Counter-Defendants would place a building into receivership with the intention selling the targeted building to an associate at a reduced price.

5. The Counter-Claimant hereby reserves all rights to file further appropriate amendments to add additional parties and causes of action.

## PARTIES

6. Counter-Claimant, James S. Dickey, is the sole manager and member of Counter-Claimant East Fourth Street, L.L.C. Together, Counter-Claimants James S. Dickey and East Fourth Street. L.L.C. own and control the properties at issue in this matter, which are a two and a three family dwellings located at 495 and 497 East Fourth Street in South Boston, Massachusetts (the "Properties").

7. Counter-Defendant, City of Boston ("City"), through the Inspectional Services Department, is a duly organized and existing municipal corporation under the laws of

3

the Commonwealth of Massachusetts, charged with the enforcement of the State Sanitary and Building Codes pursuant to M.G.L. c. 111, § 127, *et seq* and M.G.L. c. 143, § 3 *et seq*.

8. Defendant, Edward Coburn, is an attorney for Inspectional Services Department of the City of Boston, who is believed to reside in West Roxbury, Massachusetts.

9. Defendant, James Cotter III, is an attorney who the Boston Housing Court has appointed as receiver for the Properties, who is believed to reside in Milton, Massachusetts.

10. Defendant, Marylou Muirhead, is a Judge at the Boston Housing Court, who is believed to reside in the Winchester, Massachusetts.

11. Defendant, Judge Jeffery Winik, is a Judge at the Boston Housing Court, who is believed to reside in Newton, Massachusetts.

## JURISDICTION

12. Federal subject matter jurisdiction is proper in this Court pursuant to 28 U.S.C. § 1331 because this action challenges the constitutionality of certain provisions of the laws of the Commonwealth of Massachusetts under the United States Constitution.

13 Federal subject matter jurisdiction is proper in this Court pursuant to 28 U.S.C. § 1343(a)(3)-(4) because this action seeks to redress the deprivation, under color of state statute, of rights secured by the United States Constitution pursuant to 42 U.S.C. § 1983 and to secure equitable and other relief under an act of Congress for the protection of civil rights.

14. Federal subject matter jurisdiction is proper in this Court pursuant to 28 U.S.C. § 2201 because this action seeks declarations of Counter-Claimants' and Counter-Defendant's and Defendants rights and legal relations.

15. Federal subject matter jurisdiction is proper in this Court pursuant to Title 18 of the United States Code § 1961 through 1968, 18 U.C.S. §1951 and 18 U.C.S. §1341.

## VENUE

16. Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b)(2) as all of the events or omissions giving rise to these claims arose within this division. The venue is proper in this district pursuant to 18 U.C.S. § 1965(a), since the Defendants transacts affairs and resides in this district.

## RELEVENT TIMES

17. The relevant times to this Counter-Claim are from on or about April, 2000 through and continuing to the filing of this Counter-Claim

## .FACTUAL BACKGROUND

## RECEIVERSHIP STATUTE

## Violation of Civil Rights Act (42 U.S.C. § 1983)

### 199-201 Athens

18. On April 3, 2000, the City issued a vacate order for 199-201 Athens Street, South Boston, Massachusetts, owned by Jadwiga Rockalska.

19. On January 16, 2002, the city filed a petition, pursuant to the Receivership Statute, in the Boston Housing Court for the appointment of a receiver for 199-201 Athens Street. Following several unsuccessful attempts to personally serve Rochalska with the petition, the city's motion for service by publication was allowed, and on March

5

19, 2002, the petition was granted ex-parte and Jonathan Kaye was appointed receiver.

20. After Jonathan Kaye began gutting the building located at 199-201 Athens Street, a friend of Rochalska informed her of the receivership. On April 5, 2002, Rochalska, through an attorney, filed a motion supported by affidavits to stay the receivership claiming that she was never served with notice of the proceedings.

21. Upon information and belief, the City never posted a notice of the pending petition for receivership on the property located at 199-201 Athens Street, as the Receivership Statute does not require that notice of the petition for receivership be posted on the subject property.

**20 Claybourne Street**

22. On August 27, 2003, the City issued a vacate order for 20 Claybourne Street, Dorchester, Massachusetts ("20 Claybourne Street"). On October 8, 2003, the City sent a request to the Massachusetts Attorney General Office to place 20 Claybourne Street into receivership

23. Sometime in 2004, the Massachusetts Attorney General Office filed a petition for receivership, pursuant to the Receivership Statute, with the Boston Housing Court for the unoccupied building at 20 Claybourne Street. Notice was provided by publication, the petition was granted ex-parte and Jonathan Kaye was appointed receiver.

24. Upon information and belief, the City never posted a notice of the pending petition for receivership on the property located at 20 Claybourne Street, as the Receivership

6

Statute does not require that notice of the petition for receivership be posted on the subject property.

## 12 Sutton Street

25. Sometime prior to September, 2008 the City issues a vacate order for 12 Sutton Street, Mattapan, Massachusetts ("12 Sutton Street"). On September 12, 2008, the Boston Housing Court allowed the City's motion for service by publication, and subsequently allowed a petition for receivership, pursuant to the Receivership Statute, on or about October 29, 2008.

26. Upon information or belief, the City never posted a notice of the pending petition for receivership on the property located at 12 Sutton Street, Mattapan, Massachusetts, as the Receivership Statute does not require that notice of the petition for receivership be posted on the subject property.

## 495-497 East Fourth Street

27. On May 27, 2008, the City issued a vacate order for 495-497 East Fourth Street, South Boston, Massachusetts (the "Properties").

28. On May 9, 2012, the City's attorney Defendant Edward Coburn sent an email to Counter-Plaintiff James Dickey, asking for access to the Properties to inspect said Properties, but never mentioned the petition for receivership. On May 9, 2012, the City submitted a petition for receivership, pursuant to the Receivership Statute, to the Boston Housing Court, which was subsequently granted ex-parte. Service was attempted by delivering notice of the petition for receivership to James Dickey's sister, who never informed him of signing for a package on his behalf.

29. On June 20, 2012, a hearing occurred at the Boston Housing Court were the Counter-Claimants asked the Court to either dismiss the receivership petition due to insufficient service, or in the alternative stay the receivership until a hearing on the merits of the petition for receivership could occur. Judge Muirhead denied this motion.

30. Notice of the petition for receivership was never posted at the Properties, as the Receivership Statute does not require that notice of the petition for receivership be posted on the subject property; ironically, the City did posted an administrative search warrant on the Properties on or about May 12, 2012.

## PROPERTY DAMAGE DUE TO NEGLIGENCE

31. On May 27, 2008, without consent, emergency or administrative search warrant, the City entered the buildings located at 495 and 497 East Fourth Street, South Boston Massachusetts and found the buildings were in violation of 105 CMR 410.000 of the State Sanitary Code, and seized both buildings. The seizure of the buildings occurred pursuant to a custom, practice or policy that the City has implemented when it finds a residence uninhabitable.

32. On June 20, 2008, the Counter-Claimant James Dickey filed for injunctive relief in Suffolk Superior Court requesting that City be enjoined from seizing and taking possession of the Properties. In the emergency motion for injunctive relief, the Counter-Plaintiff indicated that if the Properties were not immediately return to him that the Properties could sustain substantial damage.

33. On June 23, 2008 Suffolk Superior Court did not heed the Counter-Claimant's warning, and allowed Counter-Defendants Edward Coburn and the City continuing

8

control and possession of the Properties, with the provision that they would secure a
tarp over the subject buildings to ensure that no water damage would occur at the
subject buildings.

34. On or about June 23, 2008 until July 2, 2008 Boston received a record rainfall, but the
· City did not secure a tarp over the subject buildings, the buildings sustained
substantial water damage due to Edward Coburn's and the City's deliberate
negligence.

35. On July 2, 2008 Suffolk Superior Court Judge Lauriat and the City entered into an
agreement which allowed the Counter-Claimant access to the Properties 9:00am to
5:00pm Monday thru Friday. But, this agreement denied the Counter-Claimant
access to the Properties since he had a full-time job with corresponding hours.

36. Due to the continuing restricted access to the Properties, the Counter-Claimant
appealed this "agreement" to the Massachusetts Appeals Court, (the appeal was
subsequently denied), then further appealed the decision to the Massachusetts
· Supreme Court, (the appeal was subsequently denied), then further appealed the
decision to the Federal District Court of Massachusetts.

37. On September 15, 2008 the Federal District Court ordered the parties to enter into an
agreement, (within a week), which would allowed the Counter-Claimant access to the
subject buildings evenings and weekends. The Defendant Edward Coburn and the
Counter-Defendant City blatantly ignored Judge Saris' order and refused to enter into
an agreement until November 25, 2008, (being the first date that Defendant Edward
Coburn was required to make an appearance at the Federal District Court), when the

9

substantially water damaged buildings were returned to the Counter-Claimant. The water damage sustained at the Properties is estimated to be in excess of $100,000.00.

38. On May 29, 2012, Defendant James Cotter seized the Properties, due to his negligence, to date the damages caused by this seizure are estimated to be in excess of $10,000.00.

## INTERFERING WITH A BUSINESS RELATIONSHIP

39. On or about March 2011, the City's attorney Defendant Edward Coburn relayed to the mortgage holder on the Properties that he would place the Properties into receivership if the mortgage holder renewed their mortgage. The mortgage holder subsequently initiated foreclosure proceedings, which caused significant damages to the Counter-Claimants.

40. On or about May 9, 2012, the City's attorney Edward Coburn entered into an agreement with the mortgage holder on the Properties, being that the mortgage holder would fund receiver James Cotter if the City placed the Properties into receivership, pursuant to Mass General Law chapter 111, § 127I. On May 23, 2012, the City's petition for receivership, submitted to the Boston Housing Court by Edward Coburn, was approved by Judge Muirhead. This action caused significant damages to the Counter-Claimants.

## RICO

41. During the relevant times, the Defendants Edward Coburn, Marylou Muirhead, James Cotter and Jeffery Winik conspired to extort real property from the Counter-Claimant and other property owners in the City of Boston. The City would first find a building uninhabitable and issue a vacate order, pursuant to CMR 410.831 of the

10

Massachusetts Sanitary Code. Edward Coburn would then submit a petition to the Boston Housing Court, pursuant to the Receivership Statute, requesting that the building be placed into receivership.

42. To ensure that the owners of the building were unaware of the pending petition for receivership, the City would declare that the City was unable to locate the owner of the now vacant building and would then submit a motion to the Court requesting that notice be provided by publication; Judge Muirhead or Judge Winik would subsequently approve the petition for receivership ex-parte.

43. Upon seeing the receiver's activity at the subject building, (being that the receiver would place a padlock on the building), the property owner, now aware of the receivership, immediately submits a motion to the Boston Housing Court requesting that the receivership be dismiss due to lack of notice, which is subsequently be denied by Judge Muirhead or Judge Winik.

44. Upon appointment as receiver for the subject property, James Cotter submits a *Receiver's Motion for Final Judgment, for Order Enjoining Nuisance and for Authorization to Sell Property*, stating that there are no funds to repair the building and asks the Court for authorization to sell the offending property; the motion is subsequently approved by Judge Muirhead, (or Judge Winik). In the Receiver's motion, Cotter estimates what he thinks is the dollar amount to rehab the building, which Judge Muirhead (or Judge Winik) in her *Final Judgment and Order* require be deposited to the Court within fourteen days. If the funds are not deposited within the fourteen days, receiver Cotter is then allowed to sell the subject property.

45. Upon authorization to sell the subject property, receiver James Cotter sells the property to an associate at a reduced rate; and is further compensated in the amount of about $20,000.00 for this transaction, as his agreed upon hourly rate is $350.00. Receiver James Cotter never repairs the building, as required by the Receivership Statute, but instead sells the subject building.

## 12 Sutton Street scheme

46. On or before October 29, 2008 the above scheme was put into operation as a petition for receivership, submitted to the Boston Housing Court by Edward Coburn, was granted ex-parte by Judge Muirhead and James Cotter was appointed receiver for the building located at 12 Sutton Street, Mattapan, Massachusetts ("12 Sutton Street"). Upon appointment, James Cotter submitted a *Receivers Motion for Final Judgment, for Order Enjoining Nuisance and for Authorization to Sell Property*, which was allowed by Judge Muirhead on March 6, 2009. The *Final Judgment and Order* required the property owner to deposit $300,000.00 to the Court within 14 days, the Order further stated if the property owner failed to deposit the required funds, "the Receiver is authorized, after public marketing, to sell ... the Property".

47. Upon default, receiver James Cotter placed the subject property on the "public market" on March 24, 2009, requiring that offers were due by March 31, 2009. On April 3, 2009, James Cotter submitted a motion to the Boston Housing Court, asking for authorization to accept an offer of $115,000.00 from Vu Cuong for 12 Sutton Street, this motion was approved by Judge Muirhead; a deed was subsequently executed on April 27, 2009. Receiver James Cotter received his agreed $350.00 per

12

hour compensation in the amount of $14,000.00 from the sale of 12 Sutton Street, without ever repairing the subject property.

48. The buyer of 12 Sutton Street, Vu Cuong, is well known to receiver James Cotter as he has also work with the Boston Housing Court's other receiver, Jonathan Kaye. Receiver Kaye hired Vu Cuong as a contractor for two properties that the Boston Housing Court was considering to appoint Jonathan Kaye as receiver. One of these properties was 20 Claybourne Street, Dorchester, and the other being 36 Savin Street, Roxbury, Massachusetts. (Please note that 36 Savin Street is the house that was **never** mentioned in the Rochalska case, and if known, would of greatly affected the outcome of that case, as Kaye relayed to the Rochalska court, under oath, that he had no other "projects" occurring while he was repairing the Rochalska house.)

49. Furthermore, receiver James Cotter sold Vu Chong and his family at least four building that were into his care, the above mentioned 12 Sutton Street and the following: on December 20, 2002 receiver James Cotter sold the property at 383-385 Blue Hill Avenue to Minh Hoang Vu for $155,000.00; on December 23, 2004, receiver James Cotter sold the property at 37 Regent Street to Quang Vu for $290,000.00; and on January 25, 2001, receiver James Cotter sold the property at 69 Highland Street to Vu Cuong for $125,000.00; as each of these buyers are members of the Vu family who reside at 320-340 Adams Street, Quincy, and have an office at 153 Pleasant Street, Dorchester.

**24 Seaver Street scheme**

50. On or before December, 2010 the above scheme was again put into operation as a petition for receivership, submitted to the Boston Housing Court by Edward Coburn,

13

was granted by Judge Winik and James Cotter was appointed receiver for the building located at 24 Seaver Street, Dorchester, Massachusetts ("24 Seaver Street"). Upon appointment, James Cotter submitted a *Receivers Motion for Final Judgment, for Order Enjoining Nuisance and for Authorization to Sell Property*, which was allowed by Judge Winik on March 29, 2011. The *Final Judgment and Order* required the property owner to deposit $577,200.00 to the Court within 14 days, the Order further stated if the property owner failed to deposit the required funds, "the Receiver is authorized, to sell" the subject property. On March 29, 2011, receiver James Cotter submitted a motion to the Boston Housing Court, asking for authorization to accept an offer of $525,000.00 from Trinity Green LLC for 24 Seaver Street, the motion was approved by Judge Winik; a deed was subsequently executed on May 19, 2011. Again, receiver James Cotter received his agreed compensation of $350.00 per hour in the amount of $20,825.00 from the sale of 24 Seaver Street, without ever repairing the subject property.

### 495-497 East Fourth Street scheme

51. On or before May 12, 2012 the above scheme was again put into operation as a petition for receivership, submitted to the Boston Housing Court by Edward Coburn, was granted ex-parte by Judge Muirhead and James Cotter was appointed receiver for the buildings located at 495-497 East Fourth Street, South Boston, Massachusetts ("the Properties") On May 29, 2012, James Cotter seized the Properties, and placed padlocks on all doors. On June 1, 2012, the receivership case was transferred to this Court, being the instant case, thus stopping James Cotter from completing the scheme. As of August 7, 2012, James Cotter has yet to do any repairs to the

14

Properties, and the amount currently due on his Receiver's fee is estimated at
$10,000.00.

## COUNTS

### COUNT ONE

**Receivership Statute**

**Violation of Civil Rights Act (42 U.S.C. § 1983)**

52. Counter-Claimants incorporate by reference each preceding paragraph of the
    Counter-Claim as if fully restated herein and further allege as follows:

53. Defendants are persons who, under color of statute, ordinance, regulation, custom, or
    usage, of the Commonwealth of Massachusetts are subjecting, or causing to be
    subjected, Counter-Claimants to the deprivation of rights, privileges, or immunities
    secured by the Constitution and laws of the United States.

54. Defendants' conduct violates 42 U.S.C. § 1983.  The City first finds a building in
    violation of the State Sanitary Code, and issues a vacate order by way of condemning
    the building pursuant to 410.830. This process disturbs the "last and usual" of an
    owner occupant.  The City then petitions the Boston Housing Court for receivership
    of the subject property, but as the building is now vacant, the City seeks notice by
    publication since the whereabouts of the owner is unknown.  The City never posts the
    pending petition for receivership on the subject property, as M.G.L. c.111, § 127I,
    (the "Receivership Statute"), does not require notice be also provided by posting the
    subject property.  The City has placed numerous building into receivership by serving
    service by publication, pursuant to Mass. R. Civ. P.  4(d)(1), just a few of these cases

15

are City of Boston v. Rochalska, City of Boston v. Stephen Powell, City of Boston v. Ann Brown.

55. The lack of service by not posting the subject premise is in violation of 42 U.S.C. 1983 and the notice procedures employed by the plaintiff violates the Fifth Amendment and the Due Process Clause of the Fourteenth Amendment of the U.S. Constitution. "An elementary and fundamental requirement of due process in any proceeding which is to be accorded finality is notice Plaintiff reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." *Mullane*, 339 U.S. at 339 U.S. 314.

56. Without relief from this Court, the Defendants, acting under color of statute, ordinance, regulation, custom, or usage, of the Commonwealth of Massachusetts, and will continue to subject, or cause to be subjected, Counter-Claimants and other property owners to the deprivation of rights, privileges, or immunities secured by the Constitution and laws of the United States.

## COUNT TWO

### Declaratory Relief (22 U.S.C. § 2201)

57. Counter-Claimants incorporate by reference each preceding paragraph of the Counter-Claim as if fully restated herein and further allege as follows:

58. A defined and concrete controversy of a justifiable nature exists between Counter-Claimants and Defendants concerning the constitutionality of the challenged Massachusetts laws in that Plaintiffs claim that the challenged Massachusetts laws violate the due process requirements of the Fifth and Fourteenth Amendment of the

16

United States Constitution, whereas Defendants maintain that the challenged

Massachusetts laws are valid and enforceable.

59. Pursuant to the Federal Declaratory Judgment Act, 28 U.S.C. § 2201, this Court

should determine Counter-Claimants and Defendants' rights and legal relations and

declare that the challenged Massachusetts law, (M.G.L. c.111, § 127I), violate the due

process requirements of the Fifth and Fourteenth Amendment of the United States

Constitution and therefore is invalid and unenforceable.

## COUNT THREE

### Equitable and Ancillary Relief (28 U.S.C. § 2202)

60. Counter-Claimants incorporate by reference each preceding paragraph of the

Counter-Claim as if fully restated herein and further allege as follows:

61. Counter-Claimants, as a consequence of the unconstitutionality of the challenged

Massachusetts law, (M.G.L. c.111, § 127I), and the violation of their constitutional

rights, are entitled to equitable and ancillary relief including preliminary and

permanent injunctive relief.

62. Preliminary injunctive relief is justified because:

   a. Counter-Claimants are likely to succeed on the merits;

   b. Counter-Claimants are likely to suffer irreparable harm if the injunction is denied

   because enforcement of the challenged Massachusetts law is a continuing

   violation of Counter-Claimants' constitutional rights;

   c. The continuing harm inflicted upon Counter-Claimants by the challenged

   Massachusetts laws outweighs any imposition, hardship, or harm that would stem

   from enjoining their enforcement; and

17

d.  Enjoining the challenged Massachusetts law serves the public interest.

63. Permanent injunctive relief is justified because Counter-Claimants have no adequate

remedy at law to protect them from the continuing threat of enforcement of the

challenged Massachusetts; (M.G.L. c.111, § 127I), and the chilling effect these laws

have upon the exercise of Counter-Plaintiffs' constitutional rights. Indeed, any other

remedy this Court may award would be attended with such uncertainties as to deny

substantial relief, involve a multiplicity of suits, and cause further irreparable injury

to Counter-Claimants. Further, permanent injunctive relief is justified because:

a.  Counter-Claimants will prevail on the merits;

b.  Counter-Claimants will suffer irreparable injury in the absence of injunctive relief

because enforcement of the challenged Massachusetts laws is a continuing

violation of Counter-Claimants' constitutional rights;

c.  The continuing harm inflicted upon Counter-Claimants by the challenged

Massachusetts law outweighs any imposition, hardship, or harm that will stem

from enjoining their enforcement; and

d.  Enjoining the challenged Massachusetts law serves the public interest.

64. Pursuant to 28 U.S.C. § 2202, this Court should grant Counter-Claimants'

preliminary and permanent injunctive relief enjoining Counter-Defendants, their

agents, servants, and employees and all other persons acting on behalf of, through the

authority of, or in concert with them from enforcing the challenged Massachusetts

law, (M.G.L. c.111, § 127I).

## COUNT FOUR

### Negligence

65. Counter-Claimants incorporate by reference each preceding paragraph of the Counter-Claim as if fully restated herein and further allege as follows:

66. On May 27, 2008, the City seized the Properties, without hearing or notice. On June 23, 2008, the Counter-Claimant asked Suffolk Superior Court to enjoin the City from denying him access to the Properties, due to the possibility that the Properties could sustain substantial water damage. The City relayed to the Court that the City would place a tarp over the building to protect the building, but this was never done.

67. As it is undisputed that the Properties were in the possession and control of the City from May 27, 2008 thru November 25, 2008, the City had a legal duty to protect the Properties from water damage. Defendant Edward Coburn and the City's lack of action by not placing a tarp on the Properties is a clear breach of standard care.

68. On May 29, 2012, the Counter Defendant and Defendants Edward Coburn and James Cotter again seized the Properties, damages are estimated to be in excess of $10,000.00

## COUNT FIVE

### Tortious Interfering with a Business Relationship

69. Counter-Claimants incorporate by reference each preceding paragraph of the Counter-Claim as if fully restated herein and further allege as follows:

70. The Defendant Edward Coburn and the Counter-Defendant City of Boston's continuing interference of the business relationship between the Counter-Plaintiffs and the mortgage holder of the Properties has caused the Counter-Claimants

19

significant damages due to the foreclosure proceedings of the mortgage holder, estimated to be in excess of $200,000.00. The Defendant/Counter-Defendant's actions constitute a tortious interference with that business relationship.

## COUNT SIX

### Violation of RICO 18 U.S.C. § 1962(c)

71. Counter-Claimants incorporate by reference each preceding paragraph of the Counter-Claim as if fully restated herein and further allege as follows:

72. This claim is for relief pursuant to Title IX of the Organized Crime Control Act of 1970, Public Law 91-452, 84 Stat. 922, commonly known and referred to as RICO, codified at 18 U.S.C. § 1961, et. Seq., and in particular for violations of 18 U.S.C. § 1962. The Counter-Claimants also seeks declaratory and injunctive relief and monetary damages as restitution as well as treble damages to the Counter-Claimants for the Counter-Defendants' violation as alleged herein pursuant to 18 U.S.C. § 1964(c).

73. This counter-claim asserts violations of the Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. § 1961-1968, the Hobbs Act, 18 U.S.C. § 1951, and Mail Fraud, 18 U.S.C. § 1341. The Counter-Claimant hereby reserves all rights to file further appropriate amendments to add additional parties and causes of action.

74. The Counter-Defendants are a "person" within the meaning of 18 U.C.S. § 1961(3) and 1964(c).

75. The Boston Housing Court is an "enterprise" within the meaning of 18 U.C.S. § 1961(4) and § 1962(c), which was engaged in and the activities of which affected

20

interstate commerce during the relevant times.

76. The Defendants Edward Coburn, James Cotter, Marylou Muirhead and Jeffery Winik are employed by or associated with an enterprise, that is, the Boston Housing Court, and did conduct or participate, directly or indirectly, in the conduct of the affairs of the Boston Housing Court through a pattern of racketeering activity within the meaning of 18 U.S.C. § 1961(1)(b) and 1961(5) and 1962(c), to wit:

(a). Multiple instances of extortion/attempted extortion under color of official right in violation of 18 U.S.C. § 1951. The Defendants extort/attempted to extort property from their owners by having an associate "purchase" the property at a reduced rate, with the understanding that receiver James Cotter's receiver hourly compensation would be $350.00, which would exceed $15,000.00 per scheme.

(b). Multiple instances of mail fraud in violation of 18 U.S.C. § 1341. The Defendants and associates utilized the United States Post Office to mail documents with false or misleading information with the intent to extort property from their owners by "purchasing" the targeted property at a reduced rate. An example of such a mailing is when the Boston Housing Court mailed the Counter-Claimants in each of the above mentioned receivership cases served their various orders, and when Edward Coburn and James Cotter served their various motions on all parties involved. (The Counter-Claimants received the Boston Housing Court's Order appointing James Cotter as receiver for the Properties via first class mail on or about May 27, 2012; and on February 26, 2009, James Cotter served his *Receiver's Motion for Final Judgment, for Order Enjoining Nuisance and for Authorization to Sell Property* via first class mail to all parties connected to the

21

receiver case for 12 Sutton Street.

77. By reason of violation of 18 U.S.C. § 1962(c) committed by the Defendants, the Counter-Claimants were injured in an as yet undetermined amount, believed to be not less than approximately $200,000.00, within the meaning of 18 U.S.C. § 1964(c).

## COUNT SEVEN

**Violation of RICO 18 U.S.C. § 1962(d) by Conspiracy to Violate 18 U.S.C. § 1962(c)**

78. Counter-Claimants incorporate by reference each preceding paragraph of the Counter-Claim as if fully restated herein and further allege as follows:

79. The Defendants are a "person" within the meaning of 18 U.C.S. § 1961(3) and 1964(c).

80. The Boston Housing Court is an "enterprise" within the meaning of 18 U.C.S. § 1961(4) and § 1962(c), which was engaged in and the activities of which affected interstate commerce during the relevant times.

81. The Defendants Edward Coburn, Marylou Muirhead, Jeffery Winik and James Cotter are employed by or associated with an enterprise, that is, the Boston Housing Court, and did conduct or participate, directly or indirectly, in the conduct of the affairs of the Boston Housing Court through a pattern of racketeering activity within the meaning of 18 U.S.C. § 1961(1)(b) and 1965(5) and 1962(c), to wit:

(a). Multiple instances of extortion/attempted extortion under color of official right in violation of 18 U.S.C. § 1951. The Defendants extort/attempted to extort property from their owners by having an associate "purchase" the property at a reduced rate, with the understanding that receiver James Cotter's hourly compensation would be $350.00, which would exceed $15,000.00 per scheme.

22

(b). Multiple instances of mail fraud in violation of 18 U.S.C. § 1341. The

Defendants and associates utilized the United States Post Office to mail

documents containing fraudulent information with the intent to extort property

from their owners by "purchasing" the targeted property at a reduced rate. (An

example of such a mailing is when the Boston Housing Court mailed the Counter-

Claimants in each of the above mentioned receivership cases served their various

orders, and when Edward Coburn and James Cotter served their various motions

on all parties involved. The Counter-Plaintiffs received the Boston Housing

Court's Order appointing James Cotter as receiver for the Properties via first class

mail on or about May 27, 2012; and on February 26, 2009, James Cotter served

his *Receiver's Motion for Final Judgment, for Order Enjoining Nuisance and for

Authorization to Sell Property* via first class mail to all parties connected to the

receiver case for 12 Sutton Street.)

82. By reason of violation of 18 U.S.C. § 1962(c) committed by the Defendants, the

Counter-Claimants were injured in an as yet undetermined amount, believed to be not

less than approximately $200,000.00, within the meaning of 18 U.S.C. § 1964(c).

## PRAYER FOR RELIEF

Wherefore, Counter-Claimants respectfully pray that this Court will:

### Receivership Statute

### Violation of Civil Rights Act (42 U.S.C. § 1983)

1. Declare the challenged Massachusetts law, M.G.L. c. 111, § 127I, to be

unconstitutional under the United States Constitution and therefore unenforceable;

2. Issue a preliminary and permanent injunction:

23

a. Restraining Defendants, their agents, servants, and employees and all other
persons acting on behalf of, through the authority of, or in concert with
Defendants from enforcing or in any manner giving effect to the challenged
Massachusetts laws;

b. Directing Defendants:

   i. To notify those governmental officials and governmental boards and bodies of
the Commonwealth of Massachusetts, the activities which said Defendants are
authorized by law to supervise, direct, or coordinate, that the provisions of the
challenged Massachusetts law is unconstitutional and void;

   ii. To instruct those governmental officials and governmental boards and bodies
to cease enforcing or in any manner giving effect to the challenged
Massachusetts law;

3. Award Counter-Claimants reasonable and necessary attorneys' fees, expert fees, and
costs associated with bringing and prosecuting this action, pursuant to 42 U.S.C. §
1988; and

4. Grant any and all other necessary and proper relief to which the Counter-Claimants
are entitled, pursuant to 28 U.S.C. § 2202.

## Negligence

1. Award Counter-Claimants for damages caused by Counter-Defendant/Defendants
Edward Coburn and James Cotter's negligent actions, estimated to be in excess of
$110,000.00.

2. For any further and other relief the Court deems just and proper.

24

**Tortious Interfering with a Business Relationship**

1. Award Counter-Claimants for damages caused by Counter-Defendant/Defendant Edward Coburn's actions, estimated to be in excess of $200,000.00.

2 For any further and other relief the Court deems just and proper.

**Violation of RICO 18 U.S.C. § 1962(c) and Violation of RICO 18 U.S.C. § 1962(d) by Conspiracy to Violate 18 U.S.C. § 1962(c)**

1. Judgment be entered against by reason of the violation of 18 U.S.C. § 1962(c) committed by Defendants Edward Coburn, James Cotter, Marylou Muirhead and Jeffery Winik:

   a. In an undetermined amount not less then Two Hundred Thousand Dollars ($200,000.00) upon the First Claim for Relief, for violation of 18 U.S.C. § 1962(c), the sum duly trebled in accordance with 18 U.S.C. 1964(c).

   b. In an undetermined amount not less then Two Hundred Thousand Dollars ($200,000.00) upon the Second Claim for Relief, for violation of 18 U.S.C. § 1962(d) by conspiracy to violate 18 U.S.C. § 1962(c), the sum duly trebled in accordance with 18 U.S.C. § 1964(c).

   c. For the cost of suit including attorneys' fees in accordance with 18 U.S.C. § 1964(c), interest and costs.

2. Equitable relief against Defendant in the form of such injunctive and related relief as might be appropriate in accordance with 18 U.S.C. § 1964(a), including:

   a. Reasonable restrictions on the future activities and investments of the Defendant.

   b. Any restrictions which may be appropriate on future conduct of activities.

25

c. For such other damages, relief and pre and post-judgment interest as the Court

may deem just and proper.

**JURY DEMAND**

The Counter-Claimant, James Dickey, respectfully requests a jury trial.

by Pro Se Counter-Claimant:

Date: 8/7/2012

James Dickey
10 NewBridge Road
Sudbury, MA 01776
978.443.2504

**CERTIFICATE OF SERVICE**

I hereby certify that a true copy of the above document was served upon the attorney of
record for each party by U.S. mail on August 7, 2012.

James Dickey

26